| NIKE USA, INC. | : | IN THE |
| Plaintiff, | : | CIRCUIT COURT |
| v. | : | FOR |
| ANTONIO FABRIZIO LIMA PASSARI | : | BALTIMORE COUNTY |
| Defendant. | : | Case No. C-03-CV-25-003731 |

...oooOooo...

## DEFENDANT'S COUNTERCLAIM AGAINST PLAINTIFF

Defendant Passari, through undersigned counsel, hereby files this counterclaim pursuant to 42 U.S.C. Section 1981 ("Section 1981") for racial/ethnic discrimination and retaliation, and in support thereof states as follows:

## THE PARTIES

1.      Counter-Plaintiff Antonio Fabrizio Lima Passari is an individual and former employee of Counterdefendant Nike USA, Inc. ("Nike") who served as Senior Director, Global Operations and Technology Strategy, for Nike in Oregon between September 2022 and August 1, 2023.

2.      Counter-Defendant Nike is an Oregon corporation registered to do business in the State of Maryland.  Counter-Defendant Nike is a corporation that specializes in design, development, marketing and sales of athletic footwear, apparel, and other goods and services.

## JURISDICTION

3.      This Court has jurisdiction pursuant to Md. Cts. & Jud. Proc. Code Ann. § 6-103 because Counter-Defendant Nike transacts business in Maryland, either directly or through an agent, entered contracts to provide goods, services or manufactured products in Maryland, caused tortious injury by an act or omission in Maryland, or engaged in a persistent course of conduct in

Maryland or derived substantial revenue from goods, services or manufactures products used or consumed in Maryland.

## VENUE

4. Venue is proper in this Court because, among other reason, Counterdefendant Nike carries on a regular business in Baltimore County, Maryland. Md. Cts. & Jud. Proc. Code Ann. §§ 6-201 and 6-202.

## FACTS

5. In September 2022, Mr. Passari began working for Nike in Oregon as Senior Strategy Director, Global Operations and Technology Strategy.

6. Mr. Passari's direct report was Ugwechi Amadi, Vice President of Strategy, Operations and Technology at Nike, but his functional daily manager was Amy White, Chief Supply Chain Officer for Nike.

7. Beginning in or about December 2022, Ms. White began treating Mr. Passari differently than similarly-situated, non-Hispanic and/or Latino employees.

8. Specifically, Ms. White would interrupt Mr. Passari in front of his coworker and embarrass and humiliate him by unfairly and baselessly criticizing his contributions and proposals, regardless of the merit of those contributions and proposals.

9. Later, Ms. White would praise the exact same contributions and proposals made by similarly-situated, non-Hispanic and/or Latino employees.

10. For example, during one meeting, Mr. Passari proposed a benchmark-based approach to measure Nike's performance against several competitors, but Ms. White stated his idea was nonsense and rejected it in an embarrassing manner; however, when a similarly-situated, non-Hispanic and/or Latino employee proposed a similar idea, Ms. White praised his

idea as "brilliant" even though it was virtually the same idea as Mr. Passari had previously proposed to the team.

11.     Similarly, when Mr. Passari proposed a detailed agenda for an upcoming workshop with senior directors, Ms. White dismissed his idea and shouted at him that his idea was horrible.  Shortly thereafter, when a similarly-situated, non-Hispanic and/or Latino employee proposed the exact same agenda, she praised him for his excellent idea.

12.     This was part of a pattern of hostile behavior and treatment by Ms. White towards Hispanic and/or Latino employees who reported to her or worked for her.

13.     In fact, several Hispanic and/or Latino employees requested to be transferred to other departments or managers because of the discriminatory and hostile treatment they were subjected to by Ms. White.

14.     Ms. White excluded Mr. Passari from key meetings, and when she did allow him to attend such meetings, she would treat him in a hostile manner, either ignoring or attacking his attempts to participate in the meetings.

15.     On or about June 27, 2023, Mr. Passari participated in his annual job performance evaluation, and at no point was he informed that his job performance was unsatisfactory or that he failed to meet expectations.

16.     On or about July 13, 2023, Mr. Passari meet with Laura Monette, HR Business Partner at Nike, and filed a formal complaint against Ms. White based on her discriminatory and hostile treatment of him because of his Hispanic and/or Latino ethnic heritage/race.

17.     Mr. Passari also requested that he be reassigned to a new manager or department where he would not have to report to Ms. White.

18.     Ms. Monette assured Mr. Passari that she would investigate his complaints and

assist him with finding a new position.

19.     Several days later, however, on July 18, 2023, Mr. Passari was notified by his official manager, Ugwechi Amadi, and a different Human Resources representative, Marissa Rainey, that his employment was being terminated, effective immediately, and he was escorted from the premises without being allowed to speak to anyone.

20.     Unlike similarly-situated, non-Hispanic and/or Latino employees, Mr. Passari had never been issued a written warning or placed on a performance improvement plan in the weeks or months before his employment was suddenly terminated.

21.     In addition, unlike other similarly-situated, non-Hispanic and/or Latino employees, Mr. Passari was not offered a severance agreement by Nike.

22.     At his termination meeting, Mr. Passari was assured that he would receive the annual bonus payment that he had previously earned by working through the end of the 2022-2023 fiscal year.

23.     At no point during his employment with Nike was Mr. Passari ever notified that his job performance was unsatisfactory or deficient or insufficient.

24.     The fact that Mr. Passari's employment was terminated just five days after he filed a discrimination and harassment complaint against Ms. White based on his Hispanic and/or Latino heritage/race demonstrates that he was terminated in retaliation for filing his discrimination and harassment complaint against Ms. White.

25.     The fact that Mr. Passari was suddenly terminated without ever having received a written warning or been placed on a performance improvement plan is further evidence that his employment was terminated in retaliation for filing his discrimination and harassment complaint against Ms. White.

## COUNT I – RACIAL/ETHNIC DISCRIMINATION/RETALIATION

### (Section 1981)

26.     Plaintiff repeats and realleges all of the allegations in the preceding paragraphs of this Complaint as if the same were fully set forth herein.

27.     Mr. Passari is a member of a protected class, Latino and/or Hispanic, entitled to protection against racial/ethnic discrimination and retaliation under Section 1981.

28.     During all relevant times, Nike was Mr. Passari's "employer" for purposes of Section 1981.

29.     During the period of time between September 1, 2022 and August 1, 2023, Defendant Nike discriminated against Mr. Passario based on his race and ethnicity, Hispanic and/or Latino, by treating him differently than other, similarly-situated, non-Hispanic and/or Latino employees and repeatedly assigning him to less favorable assignments and positions, ignoring him or criticizing him for baseless reasons in meetings, embarrassing and humiliating him in front of his peers, giving him negative performance evaluations and feedback for no reason, and treating him in a hostile manner based on false or pretextual reasons because of his Hispanic and/or Latino heritage.

30.     During the period of time between July 18, 2023 and August 1, 2023, Defendant Nike  UPS retaliated against Mr. Passari based on his racial/ethnic discrimination complaint that he filed with Nike human resources on or about July 13, 2023.

31.     Defendant Nike retaliated against Mr. Passari by treating him differently from other similarly-situated employees who had not complained about racial/ethnic discrimination and terminating his employment without ever having issued him a written warning or placed him on a performance improvement plan, unlike his similarly-situated, non-Hispanic and/or Latino

coworkers, because he engaged in protected activity.

32.    Mr. Passari suffered substantial financial and emotional distress damages as a direct result of the discriminatory and retaliatory conduct of Defendant Nike.

WHEREFORE, Ms. Passaari demands judgment in an amount greater than five-hundred thousand dollars ($500,000.00) against Defendant Nike in compensatory damages, including back pay, compensatory damages for emotional distress, punitive damages, attorney's fees, interest and costs and any and all other relief deemed appropriate by this Court.

Respectfully Submitted,

Andrew M. Dansicker, Esquire
(CPF: 9306030001)
Law Office of Andrew M. Dansicker, LLC
11350 McCormick Road
Executive Plaza II, Suite 705
Hunt Valley, Maryland  21031
Phone: 410-771-5668
Facsimile: 443-927-7390
adansicker@dansickerlaw.com

*Counsel for Defendant/Counterclaimant*
*Antonio Fabrizio Lima Passari*

## REQUEST FOR JURY TRIAL

Plaintiff hereby requests trial by jury for all claims subject to jury trial as set forth in the

Counterclaim.

Respectfully Submitted,

_____

Andrew M. Dansicker, Esquire
(CPF: 9306030001)
Law Office of Andrew M. Dansicker, LLC
11350 McCormick Road
Executive Plaza II, Suite 705
Hunt Valley, Maryland 21031
Phone: 410-771-5668
Facsimile: 443-927-7390
adansicker@dansickerlaw.com

*Counsel for Defendant/Counterclaimant*
*Antonio Fabrizio Lima Passari*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of November, 2025, a copy of the foregoing

Defendant's Counterclaim  was served electronically and mailed first class, postage pre-paid, to:

Christopher S. Young
BUSINESS & TECHNOLOGY LAW GROUP
6310 Hillside Court, Suite 160
Columbia, Maryland 21046

*Counsel for Plaintiff/Counter-Defendant Nike USA, Inc.*

Andrew M. Dansicker, Esquire