**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Northern Division**

NIKE USA, INC.,                                          :

    Plaintiff/Counter-Defendant,              :

v.                                                              :  Case No.: 1:25-CV-03996-ABA

ANTONIO FABRIZIO LIMA PASSARI,        :

    Defendant/Counter-Plaintiff.               :

...oooOooo...

**DEFENDANT/COUNTER-PLAINTIFF PASSARI'S OPPOSITION**
**TO PLAINTIFF/COUNTER-DEFENDANT NIKE'S MOTION TO DISMISS**

Defendant/Counter-Plaintiff Antonio Fabrizio Lima Passari hereby files the following

opposition to Plaintiff/Counter-Defendant Nike USA, Inc.'s ("Nike") Motion to Dismiss

("Motion to Dismiss"), and states as follows:

**INTRODUCTION**

In a nutshell, Nike's Motion to Dismiss is premised on two fallacious arguments – first,

Nike erroneously claims that 42 U.S.C. § 1981 ("Section 1981") does not apply to Mr. Passari,

because Section 1981 does not apply to individuals of Latino and/or Hispanic ancestry or

heritage.  Nike is simply wrong.  While it is correct that there are numerous court decisions

holding that Section 1981 is limited to race and does not encompass claims based on national

origin, as argued by Nike, there are also numerous applicable cases finding that Section 1981

encompasses racial discrimination and retaliation claims based on an individual's ancestry or

ethnic heritage, including Arab, Native American, Latino and/or Hispanic individuals.  Thus, the

primary basis for Nike's Motion to Dismiss should be readily rejected by the Court.

Second, Nike argues that Mr. Passari has failed to allege sufficient facts to support a Section 1981 discrimination or retaliation claim, but once again, Nike is simply wrong.  As a careful review of the Counterclaim demonstrates, Mr. Passari has clearly met the minimal pleading standard to set forth a viable claim for both discrimination and retaliation under Section 1981.[1]  Since the parties are only at the pleading stage, and since all factual allegations in the Counterclaim must be accepted as true and construed in the light most favorable for the non-moving party, for purposes of the Motion to Dismiss, it is evident that Mr. Passari has sufficiently alleged the required elements of discrimination and retaliation.[2]

## ARGUMENT

### A.   Section 1981 Covers Not Only Discrimination And Retaliation Claims Based On Race, But Also Racial Discrimination And Retaliation Claims Based On Ancestry And Ethnic Heritage, Such As Latino And Hispanic Individuals

Nike argues persuasively, citing numerous cases, that Section 1981 does not apply to national origin discrimination, but rather is limited to allegations of racial discrimination and retaliation.[3]  What Nike ignores, however, is: 1) the fact that Mr. Passari has not alleged national origin discrimination; and 2) the fact that numerous courts have found that "racial" discrimination and/or retaliation under Section 1981 also encompasses discrimination and/or retaliation based on ancestry or ethnic heritage, including individuals of Hispanic and/or Latino

---

[1] Nike expends considerable effort – nearly half of its Argument section in the Motion to Dismiss – arguing that Mr. Passari has failed to set forth sufficient factual allegations to prove a hostile work environment claim, but Mr. Passari is not pursuing a hostile work environment claim, nor does he allege such a claim in his Counterclaim.

[2] If the Court somehow finds that Mr. Passari's Counterclaim lacks sufficient factual allegations, he should be given ten days to file an amended counterclaim.

[3] Nike states that Fourth Circuit law applies to Mr. Passari's claims, but Mr. Passari was employed and worked for Nike in Oregon at all times relevant to his claims, so we believe that Ninth Circuit law would be applicable to his legal claims.

ancestry or ethnic heritage.  In light of the fact that Mr. Passari clearly and unequivocally alleges that he was subjected to racial discrimination and retaliation based on his Hispanic and/or Latino heritage, Nike's motion to dismiss is groundless.

Specifically, in *St. Francis College v. Al-Khazraji*, 481 U.S. 604, 613, 107 S. Ct. 2022 (1987), the United States Supreme Court held that Section 1981 protects "identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics."  For example, if a person is "subjected to intentional discrimination based on the fact that he was born an Arab, rather than solely on the place or nation of his origin" then he will have stated a discrimination claim under Section 1981.  *Id.*  As the Supreme Court took pains to point out, a review of the legislative history of Section 1981 makes clear that Congress intended to protect immigrant groups from discrimination.  *Id.*

The Second Circuit, relying on this Supreme Court guidance, held that an individual alleging discrimination based on their Hispanic or Latino ancestry or heritage has properly alleged a claim for racial discrimination under Section 1981.  *See Village of Freeport v. Barrella*, 814 F.3d 594, 604-605 (2d. Cir. 2016).  The court pointed out that "Hispanics clearly constitute an ethnic group" and therefore, by applying the Supreme Court's decision in *St. Francis College*, the court determined that discrimination against a Hispanic person is a form of racial discrimination covered under Section 1981.  *Id.* at 605.

Applying the same reasoning set forth by the Supreme Court in *St. Francis College*, the Ninth Circuit held in *Pavon v. Swift Trans. Co., Inc.*, 192 F.3d 902, 908 (9th Cir. 1999) that discrimination on the basis of being Hispanic was actionable under Section 1981.  Once again, the appellate court expressly pointed out that, while Section 1981 is inapplicable to national

origin discrimination, an allegation by an employee that he was discriminated against based on "his ancestry and ethnic characteristics . . . . on account of his being Hispanic" is protected by Section 1981. *Id.* at 908. Similarly, the Ninth Circuit held in *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 154 F.3d 1117, 1119 n.4 (9th Cir. 1998), that Section 1981 applied to a claim of racial discrimination based on an individual's Native American ancestry or heritage.

Likewise, even this Court has found that a plaintiff bringing a discrimination claim based on their Hispanic ethnicity has properly stated a cause of action for racial discrimination under Title VII, and the same reasoning would apply to a racial discrimination claim brought under Section 1981. *See Torre v. Fink*, 2025 U.S. Dist. LEXIS 23987, * 24 n.3 (D. Md. Feb. 11, 2025). *See also Martinez-Lopez v. Gfa Ala. Inc.*, 797 F. Supp. 3d 1309, 1349-50 (N.D. Ga. 2025) (holding that plaintiff's allegations of discrimination based on her Latino heritage stated a cause of action under Section 1981); *Michell v. McDonald's Corp.*, 2025 U.S. Dist. LEXIS 188277, * 56 (E.D.N.Y. Sept. 22, 2025) (finding that plaintiff adequately pleaded Section 1981 discrimination claim by alleging that he was a Hispanic individual); *Bliss v. Garland*, 2024 U.S. Dist. LEXIS 234476, * 31 n. 14(E.D. Va. Dec. 30, 2024) (stating that "in discrimination law, Hispanic is often - and in some courts, must - be treated as a race, not a national origin."); *Figueroa v. Perez*, 2024 U.S. Dist LEXIS 176939, * 8 (D. Conn. Sept. 30, 2024) (noting that "Discrimination because of a person's Hispanic ethnicity is the same as discrimination because of a person's race."); *Galindo v. Taylor*, 723 F. Supp. 3d 1008, 1026-28 (D. Kan. 2024) (finding that plaintiffs properly stated that they were members of a protected class under Section 1981 by alleging their Hispanic heritage, the court stated: "Other circuits have held specifically that

Hispanic is a race, and thus a protected class, for purposes of Section 1981"); *Abbasi v. Smithkline Beecham Corp.*, 2010 U.S. Dist. LEXIS 28354, * 11-13 (E.D. Pa. March 25, 2010) (finding that allegations that employer discriminated against plaintiff based on her "Persian" ancestry or heritage were cognizable under Section 1981).

Nowhere does Mr. Passari allege that he was subjected to discrimination and retaliation by Nike based on his national origin; rather, the Counterclaim clearly alleges discrimination based on his race, *i.e.*, Hispanic and/or Latino. *See Counterclaim* at ¶¶ 27-31 (alleging that he was discriminated against and subjected to retaliation "based on his race and ethnicity, Hispanic and/or Latino"). Strangely, however, Nike argues that Mr. Passari fails to state a cause of action under Section 1981 because he fails to plead "where he was born or the country from which his ancestors came" – but Mr. Passari is not attempting to argue that he was subjected to discrimination and retaliation based on his national origin. Such claims would obviously not be protected under Section 1981. Mr. Passari contends that he was subjected to discrimination and retaliation based on race and ethnic heritage and ancestry as a Hispanic and/or Latino person. It is precisely this form of racial discrimination – not national origin discrimination – that the Supreme Court recognized in *St. Francis College*.

In fact, one of the cases relied upon by Nike clearly makes this exact point. Specifically, in *Quraishi v. Kaiser Found. Health Plan of the Mid-Atl. State, Inc.*, 2013 U.S. Dist. LEXIS 75683, * 5-7 (D. Md. May 30, 2013), this Court dismissed a Section 1981 claim precisely because plaintiff's allegations were based solely on her Pakistani national origin, rather than on any specific ethnic characteristics. Here, Mr. Passari has avoided that pitfall by basing his discrimination and retaliation claims on his Hispanic and/or Latino ethnicity and ancestry, not his

national origin.  Similarly, Nike argues that *Gallego v. Gaylord National Hotel*, 2014 U.S. Dist. LEXIS 124769 (D. Md. Sept. 8, 2014), supports its argument that Mr. Passari has failed to state a cause of action under Section 1981, but that case is plainly inapposite, as it concerns a plaintiff who only alleged national origin discrimination, not discrimination based on ancestry or ethnic heritage (and has nothing to do with an individual alleging that Section 1981 applies to Hispanic and/or Latino individuals).  Once again, Mr. Passari's claim is completely different than the Section 1981 claim in *Gallego*, because Mr. Passari has expressly alleged discrimination and retaliation based on his ethnic heritage, i.e., Hispanic and/or Latino ancestry.

**B.**     **Mr. Passari Adequately Alleges Discrimination And Retaliation Based On His Race, i.e., Hispanic and/or Latino Heritage, Under Section 1981.**

With regards to discrimination, Mr. Passari expressly alleges: 1) he was treated differently than similarly-situated non-Hispanic or Latino coworkers by his manager, Amy White (*Counterclaim* at ¶ 7); 2) he was unfairly interrupted and criticized in front of his coworkers by Ms. White who would then praise coworkers who presented the same proposals and contributions that he was criticized for by Ms. White (*Counterclaim* at ¶¶ 8-9); 3) he was excluded from key meetings (*Counterclaim* at ¶ 14); and 4) he was treated in a hostile manner during other meetings (*Counterclaim* at ¶ 14)   Moreover, Mr. Passari provided specific examples of instances when he was treated in a discriminatory manner compared to his non-Hispanic or Latino colleagues, i.e., when he proposed a benchmark-based approach to measure performance in a meeting, and when he forwarded a specific agenda for an upcoming workshop. (*Counterclaim* at ¶ 10-11).  He also pointed out that several other Hispanic and/or Latino employees requested to be transferred away from Ms. White because of her hostile treatment

6

towards them.  (*Counterclaim* at ¶ 13).  These allegations are specific enough to state a cause of action for unlawful discrimination under Section 1981 at the initial pleading stage of litigation.

With regards to his retaliation claim, Mr. Passari expressly alleges that: 1) he filed a formal complaint of discriminatory and hostile treatment based on his Hispanic and/or Latino heritage with Laura Monette, Nike's HR Business Partner (*Counterclaim* at ¶ 16); 2) he was assured that an investigation would be completed into his allegations of discriminatory and hostile treatment (*Counterclaim* at ¶ 18); and 3) that his employment was terminated less than one week later, allegedly for performance reasons, even though he had never been issued a written warning or placed on a performance improvement plan as similarly-situated non-Hispanic and Latino employees had been provided in similar situations, nor had he ever been notified that his job performance was unsatisfactory or deficient prior to his sudden termination (*Counterclaim* at ¶ 19-20, 23-25).  He also alleged that he was not offered a severance agreement, unlike other, non-Hispanic or Latino coworkers who had been offered severance agreements.  (*Counterclaim* at ¶ 21).  Once again, Mr. Passari adequately alleged that he engaged in protected activity (filing a discrimination complaint with HR), that Nike took a materially adverse action against him (his employment was immediately terminated for alleged performance issues in suspicious circumstances), and that there was a causal link between the two events (the temporal proximity of five days and the fact that Mr. Passari had not previously been written up or placed on a performance improvement plan).

While it is true that Mr. Passari has not expressly identified a specific comparator with regards to his discrimination claim, he has made specific allegations about specific factual instances where he was treated differently than his non-Hispanic or Latino coworkers.  At the

initial pleading stage, Mr. Passari need not provide the level of detailed allegations demanded by Nike. Moreover, the fact that Mr. Passari has not alleged that his position either remained open or was filled by a non-Hispanic or Latino individual is hardly surprising, as Mr. Passari would not have access to that information prior to discovery in the case.

In nearly every aspect, Mr. Passari's allegations under Section 1981 mirror those recently analyzed by this Court in *Curran v. Mom's Organic Market, Inc.*, 2024 U.S. Dist. LEXIS 217958 (D. Md. December 2, 2024 – a case that, curiously, was not relied upon or even cited by Nike in its Motion to Dismiss, even though it deals directly with nearly the same exact issues (in a reverse discrimination context) arising in the current case. The Court found that Ms. Curran adequately stated a cause of action for discrimination and retaliation under Section 1981 as a non-Hispanic individual, even though she did not identify any specific similarly-situated comparators, noting that: "at the motion to dismiss stage, an employment discrimination plaintiff is not required as a matter of law to point to a similarly situated . . . comparator in order to succeed on a discrimination claim." *Id.* at * 28-29. Moreover, the allegations made by Ms. Curran were similar to the allegations made by Mr. Passari, i.e, that her manager was more critical of non-Hispanic employees than similarly situated Hispanic employees, treated non-Hispanic employees less favorably than Hispanic employees with regards to work assignments, etc. *Id.* at 29-30. For these same reasons, the Court should deny Nike's Motion to Dismiss the Counterclaim.

8

**CONCLUSION**

It is indisputable, as explained by the Supreme Court and observed by other courts, that Section 1981 does, in fact, apply to racial discrimination and/or retaliation based on a plaintiff's ancestry or ethnic heritage, i.e., Latino and/or Hispanic.  Moreover, Mr. Passari has clearly sufficiently alleged the minimum facts necessary to state a cause of action for both discrimination and retaliation under Section 1981.  He alleges that he was treated differently in various ways than similarly-situated non-Hispanic and/or Latino coworkers, and he alleges that he was retaliated against as a direct result of his complaint about the discriminatory treatment that he was subjected to by his manager at Nike.  Specifically, his retaliation allegation – that his employment was terminated, despite never having been written up or placed on a performance improvement plan, only a few days after he filed a discrimination complaint with Nike human resources – is more than sufficient to state a cause of action for unlawful retaliation under Section 1981.  For these reasons, and all other reasons set forth herein, Mr. Passari requests that the Court deny Plaintiff/Counter-Defendant Nike's Motion to Dismiss.

Dated: January 15, 2026

Respectfully Submitted,

_____/s/_____

Andrew M. Dansicker (Bar # 11765)
Law Office of Andrew M. Dansicker, LLC
Executive Plaza II, Suite 705
11350 McCormick Road
Hunt Valley, Maryland 21031
Telephone: 410-771-5668
Facsimile: 443-927-7390
adansicker@dansickerlaw.com

*Counsel for Defendant/Counter-Plaintiff*
*Antonio Fabrizio Lima Passari*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 15th day of January, 2026, that a copy of the foregoing

Defendant/Counter-Plaintiff Passari's Opposition to Plaintiff/Counter-Defendant Nike's Motion

to Dismiss and Proposed Order was served via the Court's electronic case management and filing

system, CM/ECF, upon counsel of record for Plaintiff/Counter-Defendant.


_____/s/_____

Andrew M. Dansicker
