**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| NIKE USA, INC., <br>     *Plaintiff*, <br>   <br>     v. <br>   <br> ANTONIO FABRIZIO LIMA PASSARI, <br>     *Defendant*. | Case No. 25-cv-3996-ABA |

**MEMORANDUM**

Plaintiff Nike USA, Inc. ("Nike") has moved to dismiss Defendant Antonio Fabrizio Lima Passari's ("Passari") counterclaim of race-based discrimination and retaliation in violation of 42 U.S.C. § 1981.[1] For the following reasons, the Court will dismiss Passari's discrimination counterclaim without prejudice but will allow his retaliation counterclaim to proceed.

## I.    FACTS[2]

Nike alleges in its complaint that on July 18, 2023, it terminated Passari's employment based on job performance, effective August 1, 2023. ECF No. 3 ¶ 4. Nike issued him his final paycheck on August 1, 2023. *Id*. ¶ 7. That check contained a bonus of $80,325 that Nike asserts Passari was not entitled to. *Id*. ¶¶ 8–9. Nike alleges that it asked Passari to return the overpayment on October 4, 2023, December 9, 2023, and January 22, 2024, but that, to date, he has not done so. *Id*. ¶¶ 10–11. The complaint contains one count for unjust enrichment. *Id*. ¶¶ 12–19.

---

[1] In Nike's motion, it also seeks to dismiss any section 1981 hostile workplace discrimination claim. But Passari has explicitly noted in his response that he is not asserting such a claim. ECF No. 17 at 2 n.1 ("Mr. Passari is not pursuing a hostile work environment claim, nor does he allege such a claim in his Counterclaim.").

[2] At the pleadings stage, the Court must "accept as true all of the factual allegations contained in the [counterclaim] and draw all reasonable inferences in favor of the" non-movant. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

Passari filed a counterclaim alleging race discrimination and retaliation in violation of 42 U.S.C. § 1981. ECF No. 5. Passari alleges in the counterclaim that he was discriminated against by his daily manager, Amy White, in that "[b]eginning in or about December 2022, Ms. White began treating Mr. Passari differently than similarly-situated, non-Hispanic and/or Latino employees" by "interrupt[ing] Mr. Passari in front of his coworker and embarrass[ing] and humiliat[ing] him by unfairly and baselessly criticizing his contributions and proposals, regardless of the merit of those contributions and proposals" and would then later "praise the exact same contributions and proposals made by similarly-situated, non-Hispanic and/or Latino employees." *Id.* ¶¶ 7–9.

Passari provides alleged examples of this conduct:

> [D]uring one meeting, Mr. Passari proposed a benchmark-based approach to measure Nike's performance against several competitors, but Ms. White stated his idea was nonsense and rejected it in an embarrassing manner; however, when a similarly situated, non-Hispanic and/or Latino employee proposed a similar idea, Ms. White praised his idea as "brilliant" even though it was virtually the same idea as Mr. Passari had previously proposed to the team.
>
> [And] when Mr. Passari proposed a detailed agenda for an upcoming workshop with senior directors, Ms. White dismissed his idea and shouted at him that his idea was horrible. Shortly thereafter, when a similarly-situated, non-Hispanic and/or Latino employee proposed the exact same agenda, she praised him for his excellent idea.

*Id.* ¶¶ 10–11. Passari further alleges, without additional detail, that "Ms. White excluded Mr. Passari from key meetings, and when she did allow him to attend such meetings, she would treat him in a hostile manner, either ignoring or attacking his attempts to participate in the meetings." *Id.* ¶ 14.

Passari alleges that, in general, Nike discriminated against him by:

> repeatedly assigning him to less favorable assignments and positions, ignoring him or criticizing him for baseless reasons in meetings, embarrassing and humiliating him in front of his peers, giving him negative performance evaluations and feedback for no reason, and treating him in a hostile manner based on false or pretextual reasons because of his Hispanic and/or Latino heritage.

*Id.* ¶ 29. Passari also alleges that several other "Hispanic and/or Latino employees requested to be transferred to other departments or managers because of the discriminatory and hostile treatment they were subjected to by Ms. White." *Id.* ¶ 13.

To establish an "injury" for § 1981 purposes in this context, Passari must identify an "adverse employment action" for his employment discrimination claim, and an "adverse action" for his retaliation claim. *See Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017); *see also Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 347 (2024) ("To make out a Title VII discrimination claim, a transferee must show some harm respecting an identifiable term or condition of employment."); *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006) ("An employer can effectively retaliate against an employee by taking actions not directly related to his employment or by causing him harm *outside* the workplace."). As clarified at oral argument, the sole action by Nike that Passari asserts constitutes either an "adverse employment action" (for discrimination purposes) or "adverse action" (for retaliation) purposes is his termination on July 18, 2023. Thus, Passari's claim here is that Nike discriminated against him because of his race, and because he complained about race discrimination, when it terminated his employment in July 2023.

Regarding retaliation, Passari alleges that on July 13, 2023, he "filed a formal complaint [with Nike] against Ms. White based on her discriminatory and hostile treatment of him because of his Hispanic and/or Latino ethnic heritage/race" and

"requested that he be reassigned to a new manager or department." ECF No. 5 ¶¶ 16–17. Passari alleges that on July 18, 2023, however, he was notified by Nike "that his employment was being terminated, effective immediately, and he was escorted from the premises without being allowed to speak to anyone." *Id.* ¶ 19. He also alleges that "[a]t no point during his employment with Nike was Mr. Passari ever notified that his job performance was unsatisfactory or deficient or insufficient." *Id.* ¶ 23; *see id.* ¶ 15. Passari claims that "[u]nlike similarly-situated, non-Hispanic and/or Latino employees, Mr. Passari had never been issued a written warning or placed on a performance improvement plan in the weeks or months before his employment was suddenly terminated" and that he was not offered a severance agreement, "unlike other similarly-situated, non-Hispanic and/or Latino employees." *Id.* ¶¶ 20–21. Finally, Mr. Passari alleges that "[a]t his termination meeting, [he] was assured that he would receive the annual bonus payment that he had previously earned by working through the end of the 2022–2023 fiscal year." *Id.* ¶ 22.

Nike moved to dismiss the counterclaim, ECF No. 10, Passari responded, ECF No. 17, and Nike replied, ECF No. 18. On August 5, 2026, the Court held oral argument on the motion.

## II.   STANDARD

Like a complaint, a counterclaim must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When the opposing party asserts that, even assuming the truth of the alleged facts, the counterclaim fails "to state a claim upon which relief can be granted," the opposing party may move to dismiss the counterclaim. Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss, the counterclaim's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and state a facially plausible claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As stated, when considering such a motion, the Court must "accept as true all of the factual allegations contained in the [counterclaim] and draw all reasonable inferences in favor of the plaintiff." *King*, 825 F.3d at 212. But "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555).

## III.   ARGUMENT

### A.   "Latino and/or Hispanic" Is a Race for § 1981 Purposes

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws . . . as is enjoyed by white citizens." 42 U.S.C. § 1981. The Supreme Court "has construed the section to forbid all 'racial' discrimination," including intentional discrimination based on "ancestry or ethnic characteristics." *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609, 613 (1987). But "allegations of discrimination based *purely on national origin* are insufficient to state a Section 1981 claim." *Nnadozie v. Genesis HealthCare Corp.*, 730 F. App'x 151, 157 (4th Cir. 2018) (emphasis added); *see Saint Francis Coll.*, 481 U.S. at 614 (Brennan. J., concurring) (reading the majority opinion as holding "only that discrimination based on *birthplace alone* is insufficient to state a claim under § 1981").

Passari alleges that he "is a member of a protected class, Latino and/or Hispanic." ECF No. 5 ¶ 27. Among other arguments, Nike argues that Passari cannot maintain a discrimination claim under section 1981 because although Passari

"identif[ies] himself as 'Latino and/or Hispanic,' Mr. Passari's Counterclaim is silent as to any ancestral or ethnic characteristics with which he associates himself." ECF No. 10-1 at 13.[3] In other words, Nike argues that at least based on the allegations in the operative counterclaim, Passari's claim is limited to discrimination based on national origin, not based on race. Similarly, Nike's sole argument regarding Passari's retaliation claim is that Passari has not alleged that he engaged in an activity protected by § 1981 because he only complained about treatment based on being "Hispanic and/or Latino," which Nike contends does not necessarily constitute discrimination based on race (as opposed to national origin). ECF No. 10-1 at 19–20. Passari counters that being "Hispanic and/or Latino" necessarily implicates "ancestry or ethnic characteristics," rather than simply national origin and is therefore a race under § 1981. ECF No. 17 at 2–8.

This Court agrees with Passari that his allegations that he was discriminated and retaliated against based on *being Hispanic and/or Latino* are adequate to allege that he was discriminated and retaliated against *based on race*. The Second Circuit has specifically held that "Hispanics clearly constitute an ethnic group" and "that Hispanics comprise a distinct race for purposes of § 1981." *Vill. of Freeport v. Barrella*, 814 F.3d 594, 606 (2d Cir. 2016). The Ninth Circuit agrees. *Pavon v. Swift Trans. Co., Inc.*, 192 F.3d 902, 908 (9th Cir. 1999) (holding that discrimination based on being Hispanic was actionable under Section 1981).

The Fourth Circuit has not definitively decided this question, but the Second and Ninth Circuits' reasoning is highly persuasive. And opinions in two unpublished Fourth Circuit cases strongly support Passari's position that his allegations based on

---

[3] Page citations are to the ECF pagination rather than the pagination supplied by the parties.

identifying as Latino/Hispanic fall within § 1981's prohibition on discrimination on the basis of race. *See Sorto v. AutoZone, Inc.*, 821 F. App'x 188, 197 (4th Cir. 2020) (Wynn, J. concurring) ("Disparaging references based on Sorto's Hispanic ethnicity are actionable under § 1981."); *Nnadozie*, 730 F. App'x at 157 (noting that other circuits have held that discrimination against someone for being "Middle Eastern" or "Iranian" can, although pertaining in part to national origin, also constitute discrimination on the basis of race, and observing that "with evidence of some nexus between ethnic or ancestral characteristics and workplace discrimination, there is no reason why a plaintiff cannot bring a Section 1981 claim on the basis of being 'African' or 'Nigerian'"). The Supreme Court in *Saint Francis College* likewise held that discrimination based on having been "born an Arab" is actionable under section 1981. 481 U.S. at 613.

The Supreme Court also held in *Saint Francis College* that the idea of race in connection with section 1981 should be construed broadly because it was Congress's intent to protect against ethnicity-based discrimination, "whether or not it would be classified as racial in terms of modern scientific theory." *Id.* At a minimum, being Hispanic or Latino is not merely an indication of national origin; that descriptor also inherently contains ethnic characteristics. If being Iranian, or African, or Middle Eastern can be considered an ethnicity rather than just a national origin under section 1981, certainly so can being Hispanic or Latino.

Accepting all factual assertions as true and drawing all reasonable inferences in favor of Passari, he has alleged discrimination based on ethnicity and ancestry, not merely national origin. And because Nike's sole argument for dismissal of Passari's retaliation claim is that Latino/Hispanic does not constitute a "race," its motion to dismiss that claim will be denied.

### B.    Passari Has Not Plausibly Alleged that He Was Terminated Because of His Race

To maintain a section 1981 discrimination claim, Passari must allege, among other things, that "race was a but-for cause of [his] injury." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 330 (2020). This is a different causation standard than for discrimination claims under Title VII of the Civil Rights Act of 1964, under which a plaintiff need only show that race was a "motivating factor" for the complained-of adverse employment action. 42 U.S.C. § 2000e-2(m).

Other than that different causation standard, "[c]laims of racial discrimination in employment under § 1981 and § 1983 are evaluated under the Title VII framework." *Swaso*, 698 F. App'x at 748. That means for Passari's discrimination claim he must allege facts that, if true, would plausibly establish that the fact that he identifies as Latino/Hispanic was a "but-for" cause of his termination in July 2023. His complaint falls short. Even accepting his factual allegations as true, the complaint does not plausibly allege that Nike would not have fired him "but for" his race. As detailed above, Passari has alleged that during some meetings his manager, Amy White, treated him differently than similarly situated employees who were not Hispanic or Latino. The allegations regarding that allegedly disparate treatment are too devoid of factual detail to support these claims. Even in Passari's most detailed allegations, he mentions no dates or names (other than White's) in connection with his general averments that during unspecified meetings his manager rejected his ideas while other similarly situated non-Hispanic employee's identical ideas were lauded. But even to the extent Passari alleges that the manager's alleged tone or treatment during those meetings was explained by his race, his allegations fall far short of plausibly alleging that those statements render the but-for cause of his *termination* to have been his race. This is the type of "threadbare recital[] of the

8

elements of a cause of action, supported by mere conclusory statements" that "do not suffice" under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678. As a result, Passari's discrimination claim will be dismissed without prejudice.[4]

## VI.    CONCLUSION

The Court will grant in part and deny in part Nike's motion to dismiss Passari's counterclaim. The motion will be granted in that Passari's section 1981 discrimination claim will be dismissed without prejudice. The motion will be denied in that Passari's section 1981 retaliation claim will survive.


Date:  August 12, 2026                              _____/s/_____

                                                              Adam B. Abelson
                                                              United States District Judge

---

[4] At oral argument, Nike appeared to argue, for the first time, that Passari also had not alleged but-for causation for his retaliation claim. The Court concludes that viewing all inferences in Passari's favor on this issue, he has adequately alleged that he would not have been fired if he had not complained about the alleged discrimination, especially given the extremely short period between his complaint and his firing.